UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR GUTIERREZ,<br><br>Plaintiff,<br><br>v.<br><br>KAISER PERMANENTE, a California Corporation; SERVICE EMPLOYEES INTERNATIONAL UNION -- UNITED HEALTHCARE WORKERS WEST (SEIU-UHW), a California Union; and DOES 1-50, inclusive<br><br>Defendants. | No. 2:17-cv-00897-MCE-GGH<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Arthur Gutierrez ("Plaintiff"), a former employee of Defendant Kaiser Permanente ("Kaiser"), seeks redress from Kaiser through the present action for his alleged wrongful termination. In addition to alleging various claims for discrimination, retaliation, wrongful termination and intentional infliction of emotional distress against Kaiser, Plaintiff also asserts that Kaiser breached the applicable union collective bargaining agreement ("CBA") by discharging Plaintiff without just cause and by failing to resolve his grievances in a timely manner.

Kaiser now moves to dismiss Plaintiff's Fourth and Eighth Causes of Action alleged in Plaintiff's operative Second Amended Complaint ("SAC") for failure to state a

1

viable claim under Federal Rule of Civil Procedure 12(b)(6).[1] According to Kaiser, those causes of action, for negligence and for intentional infliction of emotional distress, respectively, are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). In addition, Kaiser moves to strike, pursuant to Rule 12(f), the punitive damages allegations contained in the SAC on grounds that Plaintiff has failed to adequately plead his entitlement to such damages. As set forth below, Kaiser's Motions to Dismiss and to Strike are GRANTED.[2]

## BACKGROUND[3]

Plaintiff was employed as a Patient Care Technician at Kaiser between 2003 and 2015. In that capacity, he was a member of Service Employees International—United Healthcare Workers West ("SEIU-UHW" or "the Union"), and his employment with Kaiser was subject to the CBA.

In September 2014, Plaintiff began working at Kaiser's Outpatient Unit facility located in Vacaville, California. According to the SAC, he worked alongside two registered nurses, Erica Ulshoeffer and Patricia Adams, at the Outpatient Unit. Ulshoeffer was of African-American descent and Adams was Caucasian.[4] Based on his interactions with Adams, Plaintiff believed Adams was prejudiced against non-Caucasian employees.

In approximately May 2015, Plaintiff states that he witnessed Adams forcefully and intentionally push Ulshoeffer out of her way, and he believed Adams did this

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with Local Rule 230(g).

[3] Unless otherwise noted, the facts contained in this section are drawn, sometimes directly, from the allegations contained in the SAC.

[4] Plaintiff is apparently Hispanic.

2

1  because Ulshoeffer is African American.  Ulshoeffer complained to Kaiser supervisor
2  William Bordessa about what had occurred.  Despite the complaint being lodged, Plaintiff
3  alleges that Bordessa continued to schedule the three employees to work together,
4  allegedly in contravention of both the CBA and Kaiser's own protocols and procedures
5  regarding workplace harassment and violence.  SAC, ¶¶ 15-16, 31.

6        Although both Bordessa and another Kaiser employee interviewed Plaintiff about
7  the assault, and while Plaintiff claims he told both individuals that he saw Adams
8  intentionally push Ulshoeffer, Plaintiff states that Adams was never disciplined for the
9  incident.  Instead, in approximately June or July 2015, shortly after Plaintiff was
10  questioned about the assault, Plaintiff states he was falsely accused by Adams of sexual
11  harassment.  Plaintiff believes that Kaiser personnel told Adams about the statements he
12  had made concerning her alleged assault on Ulshoeffer and that Adams concocted
13  fraudulent sexual harassment claims against Plaintiff in retaliation for those statements.

14       On or about August 3, 2015, Plaintiff was called into a meeting with a Kaiser
15  Human Resources EEO Investigation Specialist to discuss Adams' sexual harassment
16  claim.  Two union representatives were also present.  Plaintiff claims he was asked a
17  series of misleading and confusing questions[5] by the Kaiser Investigation Specialist, but
18  that he told all present at the meeting that he had never engaged in sexually
19  inappropriate conduct towards Adams or any other Kaiser employee.  Id. at ¶ 24.

20       After the aforementioned meeting, Plaintiff was not contacted by any further
21  Kaiser or Union representatives concerning Adam's claim and was never placed on
22  administrative leave.  On or around December 18, 2015, however, Plaintiff was called
23  into a meeting with his supervisor, Bordessa, and a representative of Kaiser's Human
24  Resources Department.  Plaintiff brought his Union shop steward, Jose Balibrea, to the
25  meeting where Plaintiff was given a letter informing him that Kaiser had decided to
26  terminate his employment based on the EEO investigation and Plaintiff's alleged breach

---

[5] Plaintiff states that English is his second language and that he did not fully understand the questions being asked.  He claims that neither Union representative provided clarification or interpretation services to assist him in this regard.

3

of Kaiser policies. Plaintiff asked Bordessa to divulge what policies and procedures justified his termination, and he avers here that Bordessa's refusal to do so violated the CBA. Plaintiff further claims that despite the passage of two years a grievance he filed against Kaiser on the day of his termination has not been fully processed.

Plaintiff believes he was terminated in retaliation for telling Bordessa that he had witnessed Adams intentionally push Ulshoeffer. Id. at ¶ 36. Plaintiff also alleges that he was discriminated and retaliated against and wrongfully terminated by Kaiser due to his race and national origin inasmuch as both he and Ulshoeffer, two non-Caucasian Kaiser employees, were subjected to termination after they reported an assault by Adams, who is Caucasian. Id. at ¶¶ 36-37. Plaintiff claims that this conduct violated not only the CBA, but also Kaiser's own policies and pertinent provisions of California law, including the Fair Employment and Housing Act, Cal. Gov't Code § 12940, et al ("FEHA") and the Whistleblower Protection Act, Cal. Labor Code § 1102.5, et al. Id. at ¶ 55.

## STANDARDS

### A. Motion To Dismiss

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and

4

quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that

"the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

### B. Motion To Strike

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded. Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds 510 U.S. 517 (1994) (internal citations and quotations omitted). Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question. Id.

Motions to strike are generally disfavored because of the limited importance of pleading in federal practice. Spring v. Fair Isaac Corp., 2015 WL 7188234 at *2 (E.D. Cal. Nov. 16, 2015). Such motions are not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. Cervantes v. Cemex, Inc., 2014 WL 6090414 at *3 (E.D. Cal. Nov. 13, 2014).

## ANALYSIS

### A. Plaintiff's Fourth And Eighth Causes Of Action Are Preempted By The LMRA

The LMRA, at Section 301, confers federal jurisdiction over "suits for violation of contracts between an employer and labor organization representing employees."

29 U.S.C. § 185(a). Section 301 accordingly preempts state laws pursuant to "a congressional mandate to the federal courts to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Kobold v. Good Samarian Regional Med. Ctr., 832 F.3d 1024, 1032 (1985). That preemptive mandate was designed "in large part to assure that agreements to arbitrate grievances would be enforced, regardless of the vagaries of state law . . . ." Id., quoting Lividas v. Bradshaw, 512 U.S. 107, 122 (1994). Significantly for purposes of the present matter, the preemptive effect of Section 301 extends to "state law claims grounded in the provisions of the CBA or requiring interpretation of a CBA." Id., quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 210-211 (1985).

A two-step analysis is required to determine whether state law claims are preempted by Section 301. The court must first determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and [the] analysis ends there." Burnside v. Kiewit Pacific Corp., 491 F.3d 1053, 1059 (9th Cir. 2007). Even if the court determines that the asserted right is conferred by state law, and not the CBA, the court must still proceed to the second step: it must determine whether the right "is nevertheless 'substantially dependent on the analysis of the collective bargaining agreement.'" Id., quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987). If the court determines there is "'substantial dependence, the state law is preempted by § 301. If there is not, then the claim can proceed under state law.'" Kobold, 832 F.3d at 1034, citing Burnside, 491 F.3d at 1059-60.

Applying this analytical framework first to Plaintiff's negligence claim, the allegations of the SAC assert that Kaiser acted negligently by failing to discipline Adams after her purported assault, by disclosing Plaintiff's statements about the Assault to Adams, and by permitting Adams and Plaintiff to work together, even after Adams accused Plaintiff of sexual harassment. SAC at ¶ 108. Additionally, Plaintiff accuses Kaiser of "failing to conduct a fair and impartial investigation of ADAM's claims, failing to

provide Plaintiff with evidence used to support the termination of his employment, and failing to process Plaintiff's grievance per the terms of the CBA." Id.

Kaiser contends that these allegations implicate substantive areas addressed by the CBA and substantially depend on interpretation of the CBA, even if certain of the rights at issue arise through policies and principles Kaiser has itself adopted with regard to workplace violence, harassment, and retaliation protocols for the protection of its employees.[6] The Court agrees. The allegations that Kaiser was negligent in failing to discipline Adams, for example, require an interpretation of Article III of the CBA, which recognizes Kaiser's "duty and right to manage its facilities and to direct the working forces", a duty and right which includes "the right to . . . discipline and discharge Employees, subject to the terms of this Agreement and the grievance procedure." Kaiser's Request for Judicial Notice, Ex. 1 (CBA) at ¶ 110.[7] In addition, Article XXI of the CBA governs discipline and discharge, including provisions for progressive discharge and the requirement that "[n]o employee shall be disciplined or discharged without just cause." Id. at ¶¶ 1079, 1081. Moreover, with respect to Plaintiff's contention that Kaiser negligently processed and/or mishandled the claims at issue in this case, the CBA goes on, at Article XXII, to mandate that "all disputes in other matters of controversy coming within the scope of this Agreement shall be settled by the procedure hereinafter provided, including the grievance and arbitration procedure set forth in the agreement. See id. at ¶¶ 1092-1118. Again, this places any dispute concerning how the claims at issue were handled squarely within the ambit of the CBA. Plaintiff's negligence claim, as stated, thus substantially relates to the provisions of the CBA even if may also be rooted

---

[6] In this regard, the SAC cites Kaiser's Principles of Responsibilities—Kaiser Permanente's Code of Conduct, as identified in ¶ 17 and discussed throughout the SAC.

[7] Kaiser requests that the Court judicially notice the CBA between Kaiser and SEIU-UHW, pursuant to Federal Rule of Evidence 201, on grounds that documents referenced but not physically attached to the complaint can be considered on a motion to dismiss where they are central to the plaintiff's claim, and where no one questions their authenticity. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994); Stone v. Writer's Guild of America West, Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996) (taking judicial notice of the collective bargaining agreement referred to in plaintiff's compliant). Plaintiff has not opposed Kaiser's request, and, because the Court finds it proper, judicial notice of the CBA is granted.

in policies and principles Kaiser has adopted independent from that agreement. Because Section 301 of the LMRA extends to "state law claims . . . requiring interpretation of a CBA (Kobold, 832 F.3d at 1032), Plaintiff's negligence claim, as set forth in his Fourth Cause of Action is preempted by the LMRA and Kaiser's request for dismissal on that basis is well taken.

Plaintiff's Eighth Cause of Action, for intentional infliction of emotional distress, is similarly preempted. In that claim, Plaintiff alleges that he relied, inter alia, on the provisions of the CBA and that Kaiser's "discharge of Plaintiff and the way in which it was accomplished was egregious" and abused Kaiser's position of power over Plaintiff. SAC, ¶¶ 156, 158. According to the SAC, then, Kaiser's disregard of the provisions of the CBA, upon which Plaintiff relied, was one of the reasons why Kaiser's conduct rose to the extreme and outrageous level needed to justify an intentional infliction cause of action. Again, these allegations are substantially dependent on the terms of the CBA, even if they also invoke other provisions of state law like FEHA and the California Whistleblower Protection Act. As such, they are preempted.[8]

### B. Plaintiff's Request For Punitive Damages Has Not Been Pled With The Requisite Specificity

Kaiser moves to strike paragraphs 71, 88 and 153 from Plaintiff's SAC, as well as paragraph 4 of the Prayer for Relief contained in said complaint, on grounds that Plaintiff has failed to plead facts sufficient for an award of punitive damages under California Civil Code § 3294. To support punitive damages about Section 3294, a complaint must allege facts demonstrating that the defendant involved acted with oppression, fraud or malice. Cyrus v. Haveson, 65 Cal. App. 3d 306, 316-17 (1976). To meet that requirement, the complaint must identify actual facts, as opposed to conclusory

---

[8] The Court recognizes that Kaiser has alternatively argued that Plaintiff's intentional infliction of emotional distress claim, as well as his cause of action for negligence, is barred by the exclusive remedy provisions of worker's compensation law since the injuries Plaintiff purports to have suffered occurred while he was working for Kaiser. Because the Court finds that both claims are preempted in the first instance, it need not address that secondary argument and declines to do so. The Court similarly need not determine whether Plaintiff's claim for intentional infliction pleads the requisite extreme and outrageous behavior given its finding that the claim is preempted.

9

allegations showing that the defendant acted in that manner. Brousseau v. Jarrett, 73 Cal. App. 3d 864, 872 (1977).

Here, the SAC states nothing more that the acts of Defendants, which would include Kaiser "were willful, wanton, malicious, intentional, oppressive and despicable and were done in willful and conscious disregard of the rights, welfare, and safety of Plaintiff." SAC at ¶¶ 71, 88, and 153.

As Kaiser points out in its Motion to Strike, these boilerplate allegations do nothing more than recite, in nearly verbatim fashion, the requirements for imposing punitive damages under Section 3294. No specific factual allegations are made. California courts have stricken such conclusory allegations as insufficient for punitive damages purposes. See Brousseau, 73 Cal. App. 3d at 872 ("conclusory characterization of defendant's conduct as intentional, willful, and fraudulent is a patently insufficient statement of 'oppression, fraud, or malice, express or implied,' within the meaning of section 3294"). Such conclusory allegations, unsupported by facts, are inadequate and should be stricken. See Turman v. Turning Point of Cental California, Inc, 191 Cal. App. 4th at 63-64 (2011).[9]

Significantly, while Plaintiff purports to have filed a joint opposition (ECF No 52) to both the instant Motion to Strike and to the Motion to Dismiss discussed above, the body of that opposition contains no reference to, or argument against, Kaiser's Motion to Strike. Given that non-opposition, and given the Court's conclusion that the allegations of the SAC as they now stand are insufficient to support punitive damages, the Court grants the Motion to Strike.

////
////
////
////

---

[9] Similarly, the Court may strike a prayer for relief that is not available as a matter of law. Susilo v. Wells Fargo Bank, N.A., 796 F. Supp. 2d 1177, 1196 (C.D. Cal. 2011)

**CONCLUSION**

For all of the foregoing reasons, Defendant Kaiser's Motion to Dismiss (ECF No. 43) and Motion to Strike (ECF No. 47) are GRANTED with leave to amend. Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiff may (but is not required to) file an amended complaint. If Plaintiff fails to timely file an amended complaint, the causes of action and allegations dismissed by virtue of this Order will be deemed dismissed with prejudice upon no further notice to the parties.

IT IS SO ORDERED.

Dated: May 29, 2018

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE